```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                      CHARLESTON


JAMIE KUBBE,

          Plaintiff,


v.                              Civil Action No. 2:04-cv-00403


JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.
```

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for children's Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are Plaintiff's opening brief and Defendant's Motion for Judgment on the Pleadings.[1]

---

[1] Claimant filed a pleading entitled "Brief of the Appellant" on April 26, 2004. Defendant then filed its Motion for Judgment on

Plaintiff, Jamie Kubbe (hereinafter referred to as "Claimant"), through his mother, Geneva Miller, filed an application for child's SSI benefits on February 25, 2002, alleging disability as of August 1, 1996[2], due to attention deficit hyperactivity disorder ("ADHD"). (Tr. at 42-45.) The claim was denied initially and upon reconsideration. (Tr. at 26-28, 30-32.) On April 8, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 33.) The hearing was held on September 9, 2003 before the Honorable David B. Daugherty. (Tr. at 165-72.) By decision dated December 2, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-18.) The ALJ's decision became the final decision of the Commissioner on when the Appeals Council denied Claimant's request for review. (Tr. at 5-7, date not shown.) On April 26, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be

---

the Pleadings on November 29, 2004. Claimant thereafter filed "Plaintiff's Response to Motion for Judgment on the Pleadings" on December 23, 2004, which is the identical document he previously filed as his Brief.

[2] The record also reflects an onset date of February 22, 2002. (Tr. at 50.)

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Under the regulations in force during all times relevant to Claimant's claim, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b) (2003). If the child is, he or she is found not disabled. Id. § 416.924(a). If the child is not, the second inquiry is whether the child has a severe impairment. Id. § 416.924(c). An impairment is not severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id. If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.924(d). If the claimant's impairment meets or functionally equals the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. Id. § 416.924(d)(1). If it does not, the claimant is found not disabled. Id. § 416.924(d)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14, 16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of ADHD, combined type. (Tr. at 14, 16.) At the third and final inquiry, the ALJ concluded that

3

Claimant's impairment does not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, 16.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 8 years old at the time of the administrative

hearing. (Tr. at 170.) He had spent three years in kindergarten and was commencing the first grade. (Tr. at 168-9.)

The Medical Record

A Child Multi-Disciplinary Social History form was completed on February 18, 2002. (Tr. at 88-99.) This summarized Claimant's problems and scored his GAF at 60. (Tr. at 91.) It indicated that Claimant exhibited violent/aggressive behavior, oppositional/defiant behavior, impulsivity, poor judgment, and thought blocking, all at a moderate level, 365 days a year. (Tr. at 92, 94-95.) He exhibited hyperactivity and distractibility 365 days/year at a severe level, and had severe problems with poor concentration and impulsivity. (Tr. at 93-94.) His speech, thought content/processes, and sociability were within normal limits. (Tr. at 95.) Claimant's teacher recommended he be evaluated for ADHD due to his inability to sit still in class, his disruption of class, fighting and bullying other students, and his difficulties paying attention. (Tr. at 96.)

A second Child Multi-Disciplinary Social History form was completed on June 17, 2002. (Tr. at 100-11.) This report contained much of the same information as the prior report, reflecting again Claimant's GAF of 60, as well as his problems with hyperactivity, distractibility, and concentration at a severe level 365 days/year. (Tr. at 105-6.) Claimant required medicines and behavior modification. (Tr. at 107.) The comments indicate that

5

Dexedrine had improved Claimant's symptoms, but he continued to display oppositional behavior and poor conduct, such as throwing rocks at a window and breaking it. The evaluator recommended mental health treatment. (Tr. at 108.)

On February 18, 2002, Claimant underwent an Initial Psychiatric Evaluation at Prestera Mental Health Services ("Prestera"). (Tr. at 114.) The physician diagnosed ADHD, combined type, learning disorder NOS, oppositional defiant disorder, ("ODD") and a GAF of 60. He prescribed Ritalin and behavior modification. (Tr. at 114.)

Claimant returned to Prestera for treatment on March 1 and March 14, 2002. (Tr. at 126-7.) While Ritalin was initially beneficial, Claimant's appetite declined and he lost weight. The physician prescribed a new medication, which appeared to work well, according to later notes. (Tr. at 126, 121, 123.) In July, after another change and two months on Dexedrine, Claimant reported no complaints. (Tr. at 121, 124.)

On October 10, 2002, Sherry Smith, Claimant's kindergarten teacher, completed a Teacher Questionnaire concerning Claimant. (Tr. at 78-85.) Within the first domain, acquiring and using information, she indicated that Claimant's reading, math, and written language skills were at the kindergarten level. She indicated that Claimant had obvious problems reading and comprehending written material, comprehending and doing math

6

problems, and understanding and participating in class discussions. He had slight problems in giving organized oral answers and adequate descriptions, learning new material, recalling and applying previously learned material, and applying problem solving skills in class discussions.  He had serious problems expressing ideas in written form.  (Tr. at 78-9.)

Within the second domain, attending and completing tasks, Ms. Smith noted that Claimant had slight problems daily focusing long enough to finish assigned activities, carrying out multi-step instructions, and changing from one behavior to another without being disruptive.  He also had obvious problems daily waiting to take turns and working without distracting himself or others.  (Tr. at 80.)

Within the third domain, interacting and relating with others, Ms. Smith noted that Claimant had slight problems daily in playing cooperatively with children, making and keeping friends, expressing anger and asking permission appropriately, and taking turns in conversation.  He had obvious problems daily in seeking attention appropriately and in following rules.  (Tr. at 81.)

Within the fourth domain, moving about and manipulating objects, Claimant had no problems.  (Tr. at 82.)  He had no problems in the fifth domain, caring for himself.  (Tr. at 83.)

Ms. Smith commented that due to his age, Claimant could be both very helpful or irritatingly sarcastic in his humor.  She

7

stated that he sometimes "skirt[ed] on the edge of trouble." (Tr. at 85.)

Clinical psychologist Joann B. Daley, M.A., Ed.S. evaluated Claimant on January 9, 2003. (Tr. at 128-32.) She noted that without his medication, Claimant was distractible, didn't seem to listen, and moved from one activity to another. She recorded Claimant's problems with his siblings and at school. (Tr. at 128.) She noted that he bathed and dressed himself, performed household chores and could fix simple foods for himself. (Tr. at 129-30.) After a dose of his medication, Ms. Daley observed that Claimant became "calm and settled." (Tr. at 130.)

Ms. Daley noted that Claimant was sociable, cheerful and correctly oriented. His thought processes, thought content, perceptions and concentration were normal, the latter being based upon his Freedom from Distractibility Score of 90. (Tr. at 130.) His insight and judgment were average; his WISC-III Comprehension subtest score indicated a "9" in that area. Claimant had a verbal IQ of 89, a performance IQ of 87 and a full scale IQ of 87. (Tr. at 130.)

Ms. Daley diagnosed ADHD, combined type, and learning disorder, NOS. (Tr. at 131.) She noted that Claimant exhibited distractibility, hyperactivity and impulsivity during the evaluation before his medication, but had greatly improved functioning afterward. He had minimally borderline standard scores

in math, reading, and spelling. Ms. Daley ranked Claimant's cognitive abilities in the low average range. (Tr. at 131.) She indicated that he was mildly deficient in social functioning, based on his behavior without medication, and that he had normal degrees of persistence and pace. (Tr. at 131.)

State agency medical source James Binder, M.D. completed a Childhood Disability Evaluation Form in early 2002. (Tr. at 133-38.) He indicated a diagnoses of ADHD. (Tr. at 133.) He reported that Claimant had no limitations in moving about and manipulating objects or in health and well-being, and had less than marked limitations in caring for himself. (Tr. at 136.) Claimant had less than marked limitations in acquiring and using information and in interacting and relating with others, but marked deficiencies in attending and completing tasks. (Tr. at 137.)

A second Childhood Disability Evaluation Form was completed in March 2003. (Tr. at 139-44.) This physician also indicated diagnoses of ADHD and Learning Disability, NOS. The physician ranked these impairments as severe, but determined that they did not meet or medically or functionally equal the Listings. (Tr. at 139.) He opined that Claimant had no limitation in moving about and manipulating objects or in his health and physical well-being. (Tr. at 142.) Claimant exhibited less than marked limitations in all other domains. (Tr. at 142-3.)

Following the ALJ's decision herein, Claimant through counsel

submitted additional materials to the Appeals Council, including an Educational Assessment Report from the school psychologist. (Tr. at 160-64.) This report, dated February 28, 2003, described that Claimant was very impulsive and hyperactive during the exam, moving around the room and talking incessantly. (Tr. at 161.) His reading skills were in a very severe deficit range of his peers, below the first percentile. He could not read any words. His math skills were within the low average range, at the sixth percentile. His written language skills were within a very severe deficit range of his peers. He could not spell any words and misspelled his first name. (Tr. at 162.) The report concluded that Claimant did not have the academic skills to adequately complete assignments in a regular kindergarten classroom, and that he would likely require significant amounts of modification to succeed academically. (Tr. at 163.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erroneously concluded that Claimant did not meet or equal a Listing; (2) the ALJ failed to properly develop the record; (3) Claimant's waiver of counsel was not adequate, and Claimant was prejudiced by proceeding without counsel. (Pl.'s Br. at 3-7.) The Commissioner responds that the decision was supported by substantial evidence in all respects, and that Claimant knowingly waived his right to counsel.

(Def.'s Br. at 6-11.)

In connection with his first argument, Claimant asserts that the ALJ erred in his functional equivalence evaluation. Functional abilities are considered in six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for [oneself]; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(2003). The regulations provide that an impairment is of listing-level severity if a claimant has "marked" limitations in two of these domains. 20 C.F.R. § 416.926a(d) (2003). A "marked" limitation is one that interferes seriously with an individual's ability to independently initiate, sustain, or complete activities. It is a more than moderate limitation, the equivalent of functioning on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(d)(2).

Claimant asserts that he has marked limitations in two domains: acquiring and using information, and interacting and relating well with others.[3] The record shows, however, that both medical sources who assessed Claimant in these domains indicated less than marked limitation in these domains. (Tr. at 136-7, 142-

---

[3] Claimant's Brief uses the terms "social functioning" and "cognition/communication". These domains have been deleted and replaced with the six domains above. 65 Fed. Reg. 54782 and 65 Fed. Reg. 80308; 20 C.F.R. § 416.926a.

3.) While these sources were non-examiners, their reports were the only pieces of evidence on this issue. There is no medical evidence that Claimant was markedly impaired as his Brief suggests.

Claimant contends that his struggles with kindergarten, his psychological evaluation, and his performance on standardized testing all indicate that he meets a Listing. (Pl.'s Br. at 4.) While these facts are informative to some degree, they cannot outweigh the opinions of the trained medical experts who reviewed Claimant's history and opined that Claimant had a less than marked limitation in these areas.

Furthermore, Claimant forgets that examining psychologist Joann Daley found that Claimant had only mildly impaired social functioning. (Tr. at 132.) His cognitive abilities were in the low average range and his communicative abilities were normal. (Tr. at 131.) His thought processes, thought content, perceptions and concentration were normal, and his insight and judgment were average. (Tr. at 130.) Claimant had a verbal IQ of 89, a performance IQ of 87 and a full scale IQ of 87. (Tr. at 130.) Ms. Daley indicated that Claimant was "mildly deficient" in social functioning, *based on his behavior without medication*. (Tr. at 130, emphasis added.) However, after a dose of his medicine, Ms. Daley described Claimant as "calm and settled." (Tr. at 130.) If a condition can be largely managed by medication, it cannot be considered disabling. 20 C.F.R. § 416.929(c)(3)(iv)(2003); Gross

v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Moreover, even without his medication, Claimant was only "mildly deficient" in this realm.

All of the above demonstrates that while Claimant had a severe impairment, he did not suffer from "marked" limitation in two or more areas, meeting or equaling a Listing. As such, the ALJ's opinion was supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Claimant next argues that the ALJ failed in his duty to develop the record. (Pl.'s Br. at 5.) While he does not point to specific facts or issues which were inadequately developed, Claimant argues that the ALJ failed to explore all relevant facts and inquire into the issues.[4]

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has

---

[4] In a subsequent portion of his Brief, Claimant refers to specific findings contained in a report purportedly issued by a school psychologist on April 9, 2003. (Pl.'s Br. at 6.) Claimant argues that the ALJ ignored this report. The court has combed the file in search of this report, however, and finds it is not included in the record. The court notes that counsel for the Commissioner likewise was not familiar with the report and could not find it in the record. (Def.'s Br. at 10.) The court must assume, therefore, that the Claimant is in error and that such report, if it exists, was not before the ALJ.
Claimant then suggests that the testimony of Claimant's mother and the fact that Claimant was placed in special education classes support a finding of disability. While such facts may be consistent in some cases with disability, they do not in and of themselves establish disability. Again, the medical evidence in this case substantially favors the ALJ's finding that Claimant's limitations did not meet or equal a Listing.

13

a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. In that case, the court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled. 20 C.F.R. § 404.1512(a)(2003). Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment. Id. § 404.1512(c)(2003). Claimant bears the initial burden of establishing a prima facie entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976). Although the ALJ has a duty to fully and fairly develop the record,

he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).

In this case, it is difficult to address Claimant's generalized contention that the ALJ failed to explore relevant facts and issues. Claimant offers no specific argument as to what was lacking or how such deficiency was prejudicial. It appears to this court, however, that the ALJ carefully examined the evidence before him, and that there were not gaps nor great inconsistencies in the evidence which should have prompted further inquiry or the collection of additional evidence. Rather, in this case, the medical evidence before the ALJ was complete and substantial, and it simply did not establish a Listing.

Accordingly, the court proposes that the presiding District Judge find that the ALJ met his duty to properly develop the record.

Claimant concludes by arguing that his waiver of counsel was inadequate, and that his claim was prejudiced by proceeding without representation. (Pl.'s Br. at 5-6.) Unfortunately, however, Claimant's mother was specifically advised in writing of the right to representation at the hearing, yet chose to appear alone. (Tr. at 35-38, 167.) Before commencing the hearing, the ALJ also verbally offered Claimant's mother the chance to secure counsel:

> ALJ: Okay. My name's D.B. Daugherty and I'm going to be the Judge for the hearing. Now I notice that you don't have an attorney or a representative and of course you don't have to

>have, that's entirely up to you. I simply need to make sure that you understand that you have a right to have one here if you want one here.
>
>WTN: Yes.
>
>ALJ: You do understand that?
>
>WTN: Yes.
>
>ALJ: But you want to go ahead without one, is that right?
>
>WTN: Yes.

(Tr. at 167.)

Claimant does have the right to proceed without counsel; it is not incumbent upon an ALJ to force claimants to seek representation. Claimant's mother was given two clear opportunities to elect counsel, and she freely and knowingly declined. Accordingly, Claimant's argument that he had not properly waived his right to counsel must fail.

The court proposes that the presiding District Judge find that Claimant's waiver of counsel was valid.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's "Brief of Appellant" and "Plaintiff's Response to Motion for Judgment on the Pleadings", **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and

Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

May 3, 2005  
Date

Mary E. Stanley  
United States Magistrate Judge

17